

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANDREW NEAL SCOTT,

    Petitioner,

v.                             Civil No. 3:16CV804

ERIC C.WILSON,

    Respondent.

## REPORT AND RECOMMENDATION

Andrew Neal Scott, a federal inmate proceeding pro se, filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 7).[1] The matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). In his § 2241 Petition, Scott challenges the collection of his restitution pursuant to the Bureau of Prisons's ("BOP") Inmate Financial Responsibility Program ("IFRP"). (§ 2241 Pet. 10-15.) Specifically, the Court construes Scott's claims as follows:

Claim One     Scott's restitution is collected through the BOP's IFRP in violation of his Judgment and Commitment Order ("J&C Order"). (Id. at 11-12.)

Claim Two     Scott's restitution is collected through the BOP's IFRP in violation of BOP Program Statement 5380.08. (Id. at 12-13)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to Scott's submissions.

Claim Three    Scott's restitution is collected through the BOP's IFRP in violation of 28 C.F.R. § 545.11(b).  (Id. at 14.)

Claim Four     Scott's participation in the IFRP is involuntary.  (Id. at 12.)

Respondent has filed a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment ("Motion for Summary Judgment," ECF No. 19).  Scott received Roseboro[2] notice, (ECF No. 21), and has responded ("Response," ECF No. 23).  For the reasons that follow, it is RECOMMENDED that Scott's § 2241 Petition be DENIED.

## A.    Summary Judgment Standard

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  Id. at 324 (internal

---

[2] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" Id. (quoting Munson, 81 U.S. at 448). Furthermore, "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. Loc. Civ. R. 56(B).

3

In support of his Motion for Summary Judgment, Respondent submitted a Declaration of Genna D. Petre, an attorney with the Department of Justice at Federal Correctional Complex Butner ("Petre Decl.," ECF No. 20-1), and documents detailing Scott's inmate data and history, prison work history, and administrative appeals (Id. Attach. A-E, ECF Nos. 20-2 through 6).  Respondent has also submitted a Declaration of Kathy Williams, Unit Manager at Federal Correctional Complex ("FCC") Petersburg ("Williams Decl.," ECF No. 20-7), and documents detailing Scott's prison financial account and his court-ordered restitution and special assessment (Id. Attach. A-D, ECF Nos. 20-8 through 11).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. Celotex Corp., 477 U.S. at 324.  Scott submitted a sworn Declaration in response to Respondent's Motion for Summary Judgment.  ("Scott Decl.," ECF No. 23-1).  Further, Scott's § 2241 Petition is sworn to under penalty of perjury and therefore may be considered in opposition to Respondent's Motion for Summary Judgment.  See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).  Scott's original § 2241 petition was not filed on the standardized form required for filing a habeas action.  By Memorandum Order entered on October 13, 2016, the Court informed Scott that, in order to pursue a habeas action in

4

this Court, he must file such petition on the standardized form. The Court mailed Scott the standardized form for filing a § 2241 petition and informed him that he could not incorporate any other documents by reference. (ECF No. 3.) Nevertheless, when Scott filed the standardized form for filing a § 2241 petition, he failed to reattach the exhibits that he filed with his original petition. (See ECF No. 7.) However, because Respondent references Scott's exhibits, the Court will consider these exhibits in its assessment of the propriety of summary judgment. (See ECF No. 1-1.) Scott included with his original § 2241 petition: (1) a copy of page one of his J&C Order (ECF No. 1-1, at 1); (2) a copy of his Inmate Skills Development Plan dated August 26, 2016 (id. at 2); (3) a copy of his IFRP agreement (id. at 3); (4) a copy of his TRUFONE account record dated August 26, 2016 (id. at 4); and (5) copies of his grievances and appeals (id. at 5-12). In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Scott.

**B.   Summary of Facts**

On March 9, 2012, the United States District Court for the Central District of California sentenced Scott to 360 months imprisonment for child exploitation enterprise and production of

child pornography.   (Petre Decl. ¶ 4.)   The J&C Order entered on the day of Scott's sentencing ordered him to pay a $300 special assessment and $400,000 in restitution.   (ECF No. 1-1, at 1.) Specifically, the J&C Order stated, in relevant part:

> Restitution shall be due during the period of imprisonment, at the rate of not less than $15 per quarter, and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program. . . . Nominal restitution payments are ordered as the Court finds that the defendant's economical circumstances do not allow for either immediate or future payment of the amount ordered.

(Id.)

On April 16, 2013, Scott was transferred to FCC Petersburg in Virginia.   (Petre Decl. ¶ 5.)   On May 9, 2013, Scott first became employed at FCC Petersburg.   (Id. ¶ 6; id. Attach. C.) Scott "worked a variety of different jobs, but did not have a break in employment until September 24, 2015."   (Id. ¶ 6.) "From September 24, 2015 through October 23, 2015, [] Scott was temporarily unemployed," but he regained employment on October 23, 2015 and has "continued to hold that position to date." (Id.)   In the six months leading up to April 2017, "Scott's payroll deposits have averaged about $27.20 a month."   (Williams Decl. ¶ 6; id. Attach. A, at 14-15.)   Scott works a non-UNICOR job at FCC Petersburg.   (Resp. 7.)

On October 14, 2013, Scott was reviewed for the IFRP but was placed on "exempt tmp status because his six month deposit

6

was below [$]450.00."   (ECF No. 1-1, at 2.)   Scott was again reviewed for the IFRP on January 2, 2014 and April 9, 2014 but remained in "exempt tmp" status.   (Id.)   On November 18, 2014, Scott signed an IFRP agreement wherein he agreed that he would pay $25.00 per quarter towards his court-ordered financial obligations.   (ECF No. 1-1, at 3.)   Specifically, the agreement stated, in pertinent part:

> A staff member has provided me with information regarding the potential consequences of a refusal on my part to participate in the Inmate Financial Responsibility Program.
> I agree to submit payments towards satisfaction of the financial obligation(s) indicated on this form in accordance with the payment plan outlined below. I agree to follow this payment plan until the financial obligation(s) is satisfied.

(Id. (capitalization corrected).)

The agreement further detailed that Scott's first $25.00 payment would be due in March 2015.   (Id.)   On March 6, 2015, Scott made his first IFRP quarterly payment as scheduled. (Williams Decl. ¶ 5; id. Attach. A, at 9.)   Scott made subsequent quarterly IFRP payments in June, September, and December of 2015; in March, June, September and December of 2016; and in March and June of 2017.   (Id. Attach. A, at 10-14.) In March 2017, Scott's obligation to pay the special assessment terminated.   (Williams Decl. ¶ 11.)   All payments Scott made after March 2017 were applied to his outstanding restitution.

7

(Id.)

On April 17, 2015, Scott submitted a Request for Administrative Remedy to the BOP wherein he complained that, although he had less than $450.00 in his inmate account for the previous six months, he enrolled in the IFRP "per [the] coerced payment contract." (ECF No. 1-1, at 5.) Warden Wilson responded on May 21, 2015, stating, inter alia:

> The Bureau of Prisons implemented Program Statement 5380.08, Financial Responsibility Program, Inmate, to assist inmates in meeting their legitimate financial obligation. Based on this policy, you met with your Unit Team and they assisted you in setting up a financial plan to meet your court imposed obligation. On November 18, 2014, you signed a contract to make quarterly payments of $25.00. Program Statement 5380.08, Financial Responsibility Program, Inmate, states, in part, "Temporarily Exempt from Participation" will be entered for an inmate who is unable to participate adequately toward satisfaction of the obligation, ordinarily because of medical or psychological restriction which prevents the inmate from working. This assignment is at the Unit Team's discretion and may also be used for an inmate who is unable to secure employment in Unicor or advance beyond maintenance pay ($5.25) due to conditions beyond the inmate's control." Based on the above mentioned factors, the Unit Team determined you are able to participate in the FRP adequately. On March 6, 2015, you successfully made your first payment of $25.00 towards your financial obligation.

(Id. at 7 (emphasis omitted).)

Scott appealed Warden Wilson's response to the Mid-Atlantic Regional Director and then to the National Inmate Appeals Administrator; both affirmed Warden Wilson's determination.

(Id. at 9-12.)

Prior to his participation in the IFRP and until September 2014, Scott received "bimonthly and occasionally monthly" monetary deposits into his inmate trust fund account from outside sources. (Williams Decl. ¶ 7; id. Attach. A, at 5-15.) Since 2014, Scott has received two "Money Grams" from outside sources. (Id. ¶ 7; id. Attach. A, at 13.) In the six months before enrolling in the IFRP, Scott set aside $35.00 for phone calls and $65.00 for Trulincs, "a program that allows inmates to send emails to family and friends outside of the facility." (Id. ¶ 8; see id. Attach. A, at 8-14.) "In the six months after November 2014, when he signed the IFRP agreement, Scott transferred approximately $27 towards phone calls and $117 towards Trulincs for email access. . . . In the last six months, Scott has transferred approximately $19 towards phone calls and $110 towards Trulincs." (Id. ¶ 8; see id. Attach. A, at 7-15.) "Scott's participation in IFRP has been reviewed every six months, . . . and it [has been] determined that Scott is capable [of] making payments at a rate of $25 per quarter." (Id. ¶ 10 (citation omitted).) Moreover, Scott does not have a medical or psychological condition that prevents him from working. (Id. (citation omitted).) "Scott will continue to be reviewed on a six-month basis to determine whether his funds are

commensurate with his payment plan." (<u>Id.</u>) Scott "has not missed a payment to date, nor has his account ever reached a 'zero' balance." (<u>Id.</u> ¶ 5; <u>id.</u> Attach. A, at 9-14.)

## C.   Analysis

The BOP's IFRP is a penological program that encourages "each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R § 545.10. The program allows for the development of a financial plan so that inmates may satisfy obligations, such as court-ordered restitution payments, while imprisoned. <u>See</u> <u>id.</u> § 545.11(a). To encourage participation in the IFRP, an inmate who refuses to comply with an established financial plan may lose some privileges and eligibility for community-based programs. <u>See</u> <u>id.</u> § 545.11(d). The United States Court of Appeals for the Fourth Circuit has held that challenges to the BOP's collection of court-ordered restitution via the IFRP are properly brought in a § 2241 petition. <u>Fontanez v. O'Brien</u>, 807 F.3d 84, 85 (4th Cir. 2015).

In the present action, Scott challenges the application of the BOP's IFRP as a means to collect payment of his court-ordered restitution.[3]   Scott argues that pursuant to his J&C

---

[3] Scott also challenges the BOP's use of the IFRP to collect his court-ordered special assessment. (<u>See</u> § 2241 Pet. 11.) However, in March 2017, Scott's obligation to pay the special assessment terminated, and all subsequent payments have been applied solely to his still-owed restitution. (Williams Decl. ¶ 11.) Therefore, Scott's challenge to the application of the

Order, federal regulations, and IFRP policy, the BOP cannot collect more than $15.00 per quarter to apply towards his restitution.  (See § 2241 Pet. 10-15.)  Scott contends that, as a result of his participation in the IFRP at a rate of $25.00 per quarter, he is unable to afford telephone calls with his family and is insufficiently saving for life after imprisonment. (Id. at 14.)

     1.   Claim One

In Claim One, Scott argues that his restitution payments, collected pursuant to the IFRP at $25.00 per quarter, violate his J&C Order.  (§ 2241 Pet. 11-12.)  Specifically, Scott asserts that because his J&C Order states that "not less than $15 per quarter" may be collected towards his restitution, the BOP is violating the Order by collecting the $25.00 per quarter Scott agreed to in the IFRP agreement.  (See id. at 12-13, 15.) Scott's argument is frivolous.

Scott's J&C Order states that "[r]estitution shall be due during the period of imprisonment, at the rate of not less than $15 per quarter, and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program."  (ECF No. 1-1, at 1.)  The language "not less than $15 per quarter" makes clear that the

---

IFRP to payment of his special assessment is moot.  Cf. Benitez v. McGrew, No. CV 13-1202-MWF (PLA), 2013 WL 4666332, at *3 (C.D. Cal. Aug. 29, 2013) (concluding § 2241 petition was moot where petitioner had paid in full his felony assessment and thus was no longer a participant in the IFRP).

BOP is not limited to collecting $15.00 per quarter. Rather, the Order sets the <u>minimum</u> at $15.00. <u>See, e.g.</u>, <u>Dade v. Sanders</u>, 510 F. App'x 714, 718 (10th Cir. 2013) (concluding that the BOP may collect petitioner's restitution under the IFRP at a rate higher than the minimum amount ordered in his J&C Order); <u>United States v. Lemoine</u>, 546 F.3d 1042, 1046 (9th Cir. 2008) (holding that the Mandatory Victims Restitution Act "does not prohibit an inmate from voluntarily making larger . . . payments than what was set by the sentencing court. Nor does it limit the authority of the BOP, through the IFRP, to offer incentives to inmates to pay their restitution obligations in larger amounts."). Scott fails to demonstrate that the BOP is violating his J&C Order by collecting $25.00 per quarter rather than the stated minimum of $15.00 per quarter.[4] Accordingly, it is RECOMMENDED that Claim One be DISMISSED.

    2. **Claim Two**

    In his second claim, Scott argues that the BOP is collecting his restitution payments in violation of BOP Program Statement 5380.08. (<u>See</u> § 2241 Pet. 13.)

---

[4] Scott also states that it is of note that his J&C Order requires "[n]ominal restitution payments . . . as the Court finds that the defendant's economical circumstances do not allow for either immediate or future payment of the amount ordered." (§ 2241 Pet. 13.) Scott fails to explain how this language affects the BOP's authority to collect more than the $15.00 minimum when Scott's current circumstances allow for such greater payments. <u>See</u> discussion <u>infra</u> Parts C.1-2.

Program Statement 5380.08 was promulgated by the BOP to implement the IFRP as required by 28 C.F.R. § 545.11. <u>See</u> BOP Program Statement 5380.08(1). Scott cites two provisions of BOP Program Statement 5380.08 in support of his argument. Specifically, Scott recites BOP Program Statement 5380.08(8)(a)(3) and (8)(a)(5) which state, in relevant part, "[t]he court may establish a payment schedule or a deferred payment date to satisfy a restitution order or a fine" and "if the J&C has a specific payment plan outlined, payments are to be collected according to this direction provided in the court order." (<u>Id.</u>) Scott fails to explain why the BOP's collection of his restitution payments through the IFRP violates Program Statement 5380.08(8)(a). (<u>See</u> <u>id.</u>) Presumably, Scott argues that his J&C Order has set a payment plan of $15.00 per quarter, which the BOP is required to follow pursuant to Program Statement 5380.08(8)(a). (<u>See</u> <u>id.</u>) However, as discussed above, Scott's J&C Order did not establish a payment plan or direct that the BOP may collect only $15.00 per quarter. The J&C Order directed a <u>minimum</u> payment of $15.00 per quarter and noted that the "[r]estitution shall be due . . . pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program." (ECF No. 1-1, at 1.) Contrary to Scott's assertion, his IFRP payments of $25.00 a quarter are collected in accordance with

BOP Program Statement 5380.08(8)(a) because the BOP is collecting Scott's restitution pursuant to his J&C Order and at the IFRP's minimum rate.   See Dade, 510 F. App'x at 718; Lemoine, 546 F.3d at 1046.   Therefore, this Claim lacks merit and it is RECOMMENDED that Claim Two be DISMISSED.

### 3.   Claim Three

In Claim Three, Scott argues that the BOP is collecting his restitution at $25.00 per quarter in violation of 28 C.F.R. § 545.11(b).  (See § 2241 Pet. 14.)

The regulation states, in relevant part:

> In developing an inmate's financial plan, the unit team shall first subtract from the trust fund account the inmate's minimum payment schedule for UNICOR or non-UNICOR work assignments, set forth in paragraphs (b)(1) and (b)(2) of this section.   The unit team shall then exclude from its assessment $75.00 a month deposited into the inmate's trust fund account. This $75.00 is excluded to allow the inmate the opportunity to better maintain telephone communication under the Inmate Telephone System (ITS).

28 C.F.R. § 545.11(b).

Scott is a non-UNICOR inmate, so paragraph (b)(1) applies to him.  (Resp. 7.)   Paragraph (b)(1) states:  "Ordinarily, the minimum payment for non-UNICOR . . . inmates will be $25.00 per quarter.   This minimum payment may exceed $25.00, taking into consideration the inmate's specific obligations, institution resources, and community resources."   28 C.F.R. § 545.11(b)(1).

As discussed below, Scott alleges the BOP is violating 28

14

C.F.R. § 545.11(b) in two ways.

### a. The IFRP Requires a $25.00 Minimum Payment for Participation

First, Scott contests that the IFRP requires a minimum payment of $25.00 per quarter.[5] (Resp. 5.) In support of his argument, Scott heavily relies on the modifier "ordinarily" as used in 28 C.F.R. § 545.11; he claims that "[n]either regulation nor policy establishes a required minimum payment for inmates who are enrolled in the IFRP," (id. at 6), and that "[t]he word 'ordinarily' necessarily implies the possibility of something out of the ordinary, and cannot be read as 'always.'" (Id. at 7.) But Scott misreads 28 C.F.R. § 545.11(b). The regulation requires that "ordinarily" the payment for non-UNICOR inmates is $25.00 per quarter, but that "[t]his minimum payment may exceed $25.00." 28 C.F.R. § 545.11(b)(1) (emphasis added). Contrary to Scott's assertion, "ordinarily" does not limit the BOP's authority but rather grants it discretion to set a higher IFRP

---

[5] Although Scott states in his Response that he "disputes the 'fact' that the IFRP has a $25.00 a quarter minimum payment," (Resp. 5.), the IFRP's requirement that an inmate pay $25.00 per quarter is undisputed. Scott further argues that because he did not make IFRP payments in October 2013, January 2014, and April 2014, when he was on temporary exempt status, the BOP has demonstrated that there is not a minimum required IFRP payment. (Id. at 8.) However, Scott's argument is nonsensical because he acknowledges that he was placed on temporary exempt from participation status, meaning he was not participating in the IFRP at that time. It is the participation in the IFRP—i.e. the payment and receiving of the benefits—that requires at least a $25.00 per quarter payment.

amount. Moreover, courts have interpreted 28 C.F.R. § 545.11(b) to require a minimum payment of $25.00 per quarter. See United States v. Snyder, 601 F. App'x 67, 68 (3d Cir. 2015) (explaining that under the IFRP, "[a] minimum payment of $25 is required every three months"); Driggers v. Cruz, 740 F.3d 333, 335 (5th Cir. 2014) (stating that "the IFRP mandates that an inmate pay no less than $25 per quarter"). Therefore, Scott's argument that there is no minimum $25.00 payment required for participation in the IFRP is meritless. Scott fails to demonstrate that the BOP is collecting $25.00 per quarter in violation of 28 C.F.R. § 545.11(b).

> ### b. The IFRP Does Not Require that an Inmate Have $450.00 in His Account

Scott also argues that 28 C.F.R. § 545.11(b) prevents the BOP from collecting $25.00 per quarter from him if he has less than $450.00 in his inmate trust fund account for the previous six months—$75.00 for each month. (§ 2241 Pet. 14; Resp. 8.) Again, Scott misreads 28 C.F.R. § 545.11(b). The regulation requires that the unit team, when developing or reviewing an inmate's IFRP plan, shall determine the total funds deposited into the inmate's trust fund account for the previous six months, and then shall first deduct the inmate's IFRP payments before applying the $75.00 per month exemption. 28 C.F.R. § 545.11(b). Any remaining funds in the inmate's account may

16

then be considered for <u>additional</u> IFRP payments.  <u>Id.</u>; <u>Driggers</u>,

740 F.3d at 335.  The BOP Program Statement follows the

directives of the regulation for calculating IFRP payments.  See

BOP Program Statement 5380.08(8)(b).  Further, BOP Program

Statement 5380.08(8)(b) explains:

> The Unit Manager is the determining authority
> when it comes to deciding whether an inmate's IFRP
> payments are commensurate with his/her ability to pay.
> This decision is solely at the discretion of the Unit
> Manager and is to be decided on a case-by-case basis.
> Variations in what is considered a commensurate
> payment are expected and are appropriate since the
> determination of commensurate payments is based on
> individual circumstances.

<u>Id.</u>

BOP officials are granted extensive discretion to consider

an inmate eligible and able to enroll in the IFRP and, first and

foremost, Scott fails to demonstrate that this Court has the

authority to review the amount the BOP collects from him under

the IFRP.  See <u>Pontefract v. Walton</u>, No. 14-CV-1089-DRH, 2014 WL

5543190, at *2 (S.D. Ill. Nov. 3, 2014) (dismissing as meritless

petitioner's argument that the BOP must exclude $75.00 per month

from IFRP payments under 28 C.F.R. § 545.11 and BOP Program

Statement 5380.08 because "the Court does not have the authority

to interfere with the BOP's discretion in its administration of

the IFRP." (citing <u>In Re Buddhi</u>, 658 F.3d 740, 741 (7th Cir.

2011))); <u>Dunlea v. Fed. Bureau of Prisons</u>, No. 3:09-CV-

2051(CFD), 2010 WL 522715, at *2 (D. Conn. Feb. 8, 2010) (citation omitted) ("The BOP has absolute discretion in determining how the IFRP will be applied to each inmate.")). "The amount an inmate must pay under [the] IFRP is a matter entrusted to the Executive Branch, and '[c]ourts are not authorized to override the [BOP's] discretion about such matters, any more than a judge could dictate particulars about a prisoner's meal schedule or recreation.'" United States v. Rush, 853 F. Supp. 2d 159, 162 (D.D.C. 2012) (alterations in original) (quoting United States v. Sawyer, 521 F.3d 792, 794 (7th Cir. 2008)). Simply put, the BOP "does not need judicial permission to remit money from a prisoner's account, . . . Whether inmates make any money during their captivity, and, if they do, how much must be paid to creditors, are subjects well within the authority of the Executive Branch." Sawyer, 521 F.3d at 794 (citing C.F.R. § 545.11 and BOP Program Statement 5380.08). For this reason alone, Claim Three fails.

Moreover, the record establishes that the BOP has not abused its discretion or violated 28 C.F.R. 545.11(b) in its use of the IFRP to collect Scott's restitution payments. In accordance with 28 C.F.R. § 545.11(b) and BOP Program Statement 5380.08, the BOP considered Scott for participation in the IFRP early in his incarceration at FCC Petersburg, but he was placed

18

on "exempt tmp status because his six month deposit was below [$]450.00." (ECF No. 1-1, at 2.) Scott was again reviewed for the IFRP on January 2, 2014 and April 9, 2014 but remained in "exempt tmp" status. (Id.) However, during this timeframe, Scott began working, on May 9, 2013, and has only had one month-long break in employment since that time. (See Petre Decl. ¶¶ 5-6.) At his job, Scott earns approximately $27.00 per month, (Williams Decl. ¶ 6; id. Attach. A at 14-15), and Scott occasionally receives monetary support from sources outside FCC Petersburg. (See Williams Decl. ¶ 7.) On November 18, 2014, after reviewing the IFRP with BOP staff, Scott signed the IFRP agreement wherein he agreed that he would pay $25.00 a quarter towards his court-ordered financial obligations. (ECF No. 1-1, at 3.) Scott does not have a medical or psychological condition that prevents him from working. (Williams Decl. ¶ 10.) Scott "has not missed a payment to date, nor has his account ever reached a 'zero' balance." (Id. ¶ 5; id. Attach. A at 9-14.)

As Scott earns a minimum of $325.00 per year from his institutional job alone, Scott's unit manager reasonably considered him able to make four $25.00 payments a year towards his restitution. See BOP Program Statement 5380.08(8)(b). Further, the BOP may consider non-institution resources when evaluating an inmate's IFRP eligibility. 28 C.F.R. § 545.11(b).

Therefore, BOP officials appropriately considered the resources that Scott received from outside FCC Petersburg when they evaluated him for the IFRP.   The BOP then properly enrolled Scott in the IFRP by presenting him with the IFRP agreement. See BOP Program Statement 5380.08(8)(a)(5).   The BOP has continued to assess Scott's work and financial status as being commensurate with the ability to meet his scheduled restitution payments, see id. 5380.08(8)(b), all of which he has successfully made to date.  (Williams Decl. ¶ 5.)  Scott fails to demonstrate that the BOP has abused its discretion by collecting from him the minimum payment permitted by the IFRP despite the fact that he had less than $450.00 in his inmate trust fund account for the previous six months.  Cf. Pontefract, 2014 WL 5543190, at *2 (dismissing as meritless petitioner's argument that the BOP must exclude $75.00 per month from IFRP payments under 28 C.F.R. § 545.11 and BOP Program Statement 5380.08).

In his Response, Scott contests the BOP's determination that he is placing "ample" funds towards communication with his family, and the BOP's "reasonable inference" that because he receives monetary support from outside the institution, he qualifies for the IFRP.   (Resp. 2-4.)  Scott argues that the money he set aside for communication with his family has been wrongly considered "ample" by the BOP because it consisted of:

$35.00 for phone calls and $65.00 for e-mail in the six months prior to enrolling in the IFRP; $27.00 for phone calls and $117.00 for e-mail in the six months after enrolling in the IFRP; and, approximately $19.00 for phone calls and $110.00 for e-mail in the six months prior to filing the instant action. (Id. at 2; see Williams Decl. ¶ 8.)  Scott also contests the BOP's inference that because he occasionally receives monetary support from sources outside of FCC Petersburg, he is financially able to participate in the IFRP.  (Resp. 4.)

Scott fails to demonstrate any violation of 28 C.F.R. § 545.11(b) or an abuse of discretion by the BOP in its collection of the minimum payment permitted by the IFRP.  Scott has been employed for the duration of his participation in the IFRP, has a salary from institutional employment, does not have a medical or psychological condition that prevents him from working, and has never missed an IFRP payment or had a balance of zero on his account.  To the extent Scott complains that he lacks sufficient funds to make phone calls to his family, this argument rings hollow.  Scott appears to be putting hundreds of dollars a year towards phone and e-mail access (see Williams Decl. ¶ 8), but only pays $100.00 annually in restitution. Thus, Scott fails to demonstrate that the BOP has violated 28 C.F.R. § 545.11 or abused its discretion by encouraging him to

make restitution payments pursuant to the IFRP and as instructed by his J&C Order.   See Pontefract, 2014 WL 5543190, at *2; Lemoine, 546 F.3d at 1046.   Accordingly, it is RECOMMENDED that Claim Three be DISMISSED.

### 4.   Scott's Participation in the IFRP is Voluntary

In Claim Four, Scott argues that his participation in the IFRP is involuntary.   (See § 2241 Pet. 12.)   It is uncontested that Scott signed the IFRP agreement authorizing the BOP to collect from him $25.00 per quarter for his outstanding restitution.   (See ECF No. 1-1, at 3.)   Respondent explains that the IRFP is voluntary, but that "[i]f the inmate chooses not to participate, he might be delinquent on the obligations imposed by his sentence, and as a result, may forfeit certain privileges available to inmates who do participate."   (Mem. Supp. Mot. Summ. J. 8 (citations omitted), ECF No. 20.)   In his § 2241 Petition, Scott alleges that "[i]t does not seem like the [IFRP] is voluntary at all, but rather more like extortion."[6]   (§ 2241

---

[6] Further, for the first time in his Declaration in response to Respondent's Motion for Summary Judgment, Scott asserts that "[he] signed the 'Inmate Financial Plan' under duress and involuntarily."   (Scott Decl. ¶ 6, ECF No. 23-1.)   Such an airy generalization and conclusory allegation with no more, however, does "not suffice to stave off summary judgment or entitle a habeas petitioner to an evidentiary hearing."   United States v. Roane, 378 F.3d 382, 400-01 (4th Cir. 2004) (citation omitted). Furthermore, to the extent that Scott argues that the threat of being denied benefits under the IFRP amounts to duress, as explained above, he is incorrect.   See United States v. Young, 533 F. Supp. 2d 1086, 1087 (D. Nev. 2007) (concluding an inmate

Pet. 12.)   However, Scott misunderstands the characterization of the IFRP program as "voluntary."

The IFRP is voluntary in the sense that "an inmate in the [BOP's] custody may lose certain privileges by not participating in the IFRP, but the inmate's participation cannot be compelled." United States v. Boyd, 608 F.3d 331, 334 (7th Cir. 2010) (citation omitted); see Fontanez v. O'Brien, 807 F.3d 84, 85 (4th Cir. 2015) ("[T]he BOP cannot compel an inmate to make payments [under the IFRP.]" (citing Boyd, 608 F.3d at 334)). Although Scott signed the IFRP agreement, he may refuse to participate in the program at any time.   See BOP Program Statement 5380.08(9)(d).   Thus, Scott's argument that his participation in the IFRP is involuntary lacks merit.[7]  See Ward v. Chavez, 678 F.3d 1042, 1047 (9th Cir. 2012).   Accordingly, it is RECOMMENDED that Scott's Claim Four be DISMISSED.

D.  Conclusion

For the foregoing reasons, it is RECOMMENDED that the Motion for Summary Judgment (ECF No. 19) be GRANTED and the

---

does not sign an IFRP agreement under duress when he would not receive the benefits that come with the program if he did not enroll).

[7] In his Response, Scott also contends that it is a disputed fact for purposes of summary judgment whether the IFRP agreement he signed is a "contract." (Resp. 4.)   Whether or not the IFRP agreement is a contract is immaterial as at no time has Scott asked to withdraw from the IFRP agreement.   (See § 2241 Pet. 15.)

Motion to Dismiss (ECF No. 19) be DENIED as moot.  It is further RECOMMENDED that Scott's 2241 Petition (ECF No. 7) be DENIED, the action be DISMISSED, and a certificate of appealability be DENIED.

Scott is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof.  Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings.  See Fed. R. Civ. P. 72(b).  Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims, and it may also preclude further review or appeal from such judgment.  See Carr v. Hutto, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of this Report and Recommendation to Scott and counsel for Respondent.

It is so ORDERED.

                                   /s/
                              Roderick C. Young
                              United States Magistrate Judge

Date:  January 24 , 2018
Richmond, Virginia

24