**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

ANDREW NEAL SCOTT,

    Petitioner,

v.                             Civil No. 3:16CV804

ERIC C. WILSON,

    Respondent.

MAR − 2 2018

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

### MEMORANDUM OPINION

Andrew Neal Scott, a federal prisoner proceeding pro se, brings this petition pursuant to 28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 7).[1] The Magistrate Judge recommended that the Court deny the § 2241 Petition and dismiss the action. Scott filed objections. (ECF No. 26.) For the reasons that follow, Scott's objections will be overruled and the Motion for Summary Judgment will be granted.

### I.    REPORT AND RECOMMENDATION

The Magistrate Judge made the following findings and recommendations:

> In his § 2241 Petition, Scott challenges the collection of his restitution pursuant to the Bureau of Prisons's ("BOP") Inmate Financial Responsibility Program ("IFRP"). (§ 2241 Pet. 10-15.) Specifically, the Court construes Scott's claims as follows:

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to Scott's submissions.

Claim One          Scott's restitution is collected
                   through the BOP's IFRP in violation of
                   his Judgment and Commitment Order ("J&C
                   Order").  (Id. at 11-12.)

Claim Two          Scott's restitution is collected
                   through the BOP's IFRP in violation of
                   BOP Program Statement 5380.08.  (Id. at
                   12-13)

Claim Three        Scott's restitution is collected
                   through the BOP's IFRP in violation of
                   28                              C.F.R.
                   § 545.11(b).  (Id. at 14.)

Claim Four         Scott's participation in the IFRP is
                   involuntary.  (Id. at 12.)

Respondent has filed a Motion to Dismiss, or in the
alternative, a Motion for Summary Judgment ("Motion
for Summary Judgment," ECF No. 19).  Scott received
Roseboro[2] notice, (ECF No. 21), and has responded
("Response," ECF No. 23).  For the reasons that
follow, it is RECOMMENDED that Scott's § 2241 Petition
be DENIED.

## A.   Summary Judgment Standard

      Summary judgment must be rendered "if the movant
shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment
as a matter of law."  Fed. R. Civ. P. 56(a).  The
party seeking summary judgment bears the
responsibility to inform the court of the basis for
the motion, and to identify the parts of the record
which demonstrate the absence of a genuine issue of
material fact.  See Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986).  "[W]here the nonmoving party will
bear the burden of proof at trial on a dispositive
issue, a summary judgment motion may properly be made
in reliance solely on the pleadings, depositions,
answers to interrogatories, and admissions on file."
Id. at 324 (internal quotation marks omitted).  When
the motion is properly supported, the nonmoving party
must go beyond the pleadings and, by citing affidavits

_____

    [2] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" Id. (quoting Munson, 81 U.S. at 448). Furthermore, "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. Loc. Civ. R. 56(B).

In support of his Motion for Summary Judgment, Respondent submitted a Declaration of Genna D. Petre, an attorney with the Department of Justice at Federal Correctional Complex Butner ("Petre Decl.," ECF No. 20-1), and documents detailing Scott's inmate data and history, prison work history, and administrative appeals (Id. Attach. A-E, ECF Nos. 20-2 through 6). Respondent has also submitted a Declaration of Kathy Williams, Unit Manager at Federal Correctional Complex ("FCC") Petersburg ("Williams Decl.," ECF No. 20-7), and documents detailing Scott's prison financial account and his court-ordered restitution and special assessment (Id. Attach. A-D, ECF Nos. 20-8 through 11).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. Celotex Corp., 477 U.S. at 324. Scott submitted a sworn Declaration in response to Respondent's Motion for Summary Judgment. ("Scott Decl.," ECF No. 23-1). Further, Scott's § 2241 Petition is sworn to under penalty of perjury

3

and therefore may be considered in opposition to Respondent's Motion for Summary Judgment. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Scott's original § 2241 petition was not filed on the standardized form required for filing a habeas action. By Memorandum Order entered on October 13, 2016, the Court informed Scott that, in order to pursue a habeas action in this Court, he must file such petition on the standardized form. The Court mailed Scott the standardized form for filing a § 2241 petition and informed him that he could not incorporate any other documents by reference. (ECF No. 3.) Nevertheless, when Scott filed the standardized form for filing a § 2241 petition, he failed to reattach the exhibits that he filed with his original petition. (See ECF No. 7.) However, because Respondent references Scott's exhibits, the Court will consider these exhibits in its assessment of the propriety of summary judgment. (See ECF No. 1-1.) Scott included with his original § 2241 petition: (1) a copy of page one of his J&C Order (ECF No. 1-1, at 1); (2) a copy of his Inmate Skills Development Plan dated August 26, 2016 (id. at 2); (3) a copy of his IFRP agreement (id. at 3); (4) a copy of his TRUFONE account record dated August 26, 2016 (id. at 4); and (5) copies of his grievances and appeals (id. at 5-12). In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Scott.

## B. Summary of Facts

On March 9, 2012, the United States District Court for the Central District of California sentenced Scott to 360 months imprisonment for child exploitation enterprise and production of child pornography. (Petre Decl. ¶ 4.) The J&C Order entered on the day of Scott's sentencing ordered him to pay a $300 special assessment and $400,000 in restitution. (ECF No. 1-1, at 1.) Specifically, the J&C Order stated, in relevant part:

> Restitution shall be due during the period of imprisonment, at the rate of not less than $15 per quarter, and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program. . . . Nominal

4

> restitution payments are ordered as the
> Court finds that the defendant's economical
> circumstances do not allow for either
> immediate or future payment of the amount
> ordered.

(Id.)

On April 16, 2013, Scott was transferred to FCC Petersburg in Virginia. (Petre Decl. ¶ 5.) On May 9, 2013, Scott first became employed at FCC Petersburg. (Id. ¶ 6; id. Attach. C.) Scott "worked a variety of different jobs, but did not have a break in employment until September 24, 2015." (Id. ¶ 6.) "From September 24, 2015 through October 23, 2015, [] Scott was temporarily unemployed," but he regained employment on October 23, 2015 and has "continued to hold that position to date." (Id.) In the six months leading up to April 2017, "Scott's payroll deposits have averaged about $27.20 a month." (Williams Decl. ¶ 6; id. Attach. A, at 14-15.) Scott works a non-UNICOR job at FCC Petersburg. (Resp. 7.)

On October 14, 2013, Scott was reviewed for the IFRP but was placed on "exempt tmp status because his six month deposit was below [$]450.00." (ECF No. 1-1, at 2.) Scott was again reviewed for the IFRP on January 2, 2014 and April 9, 2014 but remained in "exempt tmp" status. (Id.) On November 18, 2014, Scott signed an IFRP agreement wherein he agreed that he would pay $25.00 per quarter towards his court-ordered financial obligations. (ECF No. 1-1, at 3.) Specifically, the agreement stated, in pertinent part:

> A staff member has provided me with
> information regarding the potential
> consequences of a refusal on my part to
> participate in the Inmate Financial
> Responsibility Program.
> I agree to submit payments towards
> satisfaction of the financial obligation(s)
> indicated on this form in accordance with
> the payment plan outlined below.
> I agree to follow this payment plan until
> the financial obligation(s) is satisfied.

(Id. (capitalization corrected).)

The agreement further detailed that Scott's first $25.00 payment would be due in March 2015. (Id.) On March 6, 2015, Scott made his first IFRP quarterly payment as scheduled. (Williams Decl. ¶ 5; id. Attach. A, at 9.) Scott made subsequent quarterly

IFRP payments in June, September, and December of 2015; in March, June, September and December of 2016; and in March and June of 2017. (Id. Attach. A, at 10-14.) In March 2017, Scott's obligation to pay the special assessment terminated. (Williams Decl. ¶ 11.) All payments Scott made after March 2017 were applied to his outstanding restitution. (Id.)

On April 17, 2015, Scott submitted a Request for Administrative Remedy to the BOP wherein he complained that, although he had less than $450.00 in his inmate account for the previous six months, he enrolled in the IFRP "per [the] coerced payment contract." (ECF No. 1-1, at 5.) Warden Wilson responded on May 21, 2015, stating, inter alia:

> The Bureau of Prisons implemented Program Statement 5380.08, Financial Responsibility Program, Inmate, to assist inmates in meeting their legitimate financial obligation. Based on this policy, you met with your Unit Team and they assisted you in setting up a financial plan to meet your court imposed obligation. On November 18, 2014, you signed a contract to make quarterly payments of $25.00. Program Statement 5380.08, Financial Responsibility Program, Inmate, states, in part, "Temporarily Exempt from Participation" will be entered for an inmate who is unable to participate adequately toward satisfaction of the obligation, ordinarily because of medical or psychological restriction which prevents the inmate from working. This assignment is at the Unit Team's discretion and may also be used for an inmate who is unable to secure employment in Unicor or advance beyond maintenance pay ($5.25) due to conditions beyond the inmate's control." Based on the above mentioned factors, the Unit Team determined you are able to participate in the FRP adequately. On March 6, 2015, you successfully made your first payment of $25.00 towards your financial obligation.

(Id. at 7 (emphasis omitted).)

Scott appealed Warden Wilson's response to the Mid-Atlantic Regional Director and then to the National Inmate Appeals Administrator; both affirmed

Warden Wilson's determination. (Id. at 9-12.)

Prior to his participation in the IFRP and until September 2014, Scott received "bimonthly and occasionally monthly" monetary deposits into his inmate trust fund account from outside sources. (Williams Decl. ¶ 7; id. Attach. A, at 5-15.) Since 2014, Scott has received two "Money Grams" from outside sources. (Id. ¶ 7; id. Attach. A, at 13.) In the six months before enrolling in the IFRP, Scott set aside $35.00 for phone calls and $65.00 for Trulincs, "a program that allows inmates to send emails to family and friends outside of the facility." (Id. ¶ 8; see id. Attach. A, at 8-14.) "In the six months after November 2014, when he signed the IFRP agreement, Scott transferred approximately $27 towards phone calls and $117 towards Trulincs for email access. . . . In the last six months, Scott has transferred approximately $19 towards phone calls and $110 towards Trulincs." (Id. ¶ 8; see id. Attach. A, at 7-15.) "Scott's participation in IFRP has been reviewed every six months, . . . and it [has been] determined that Scott is capable [of] making payments at a rate of $25 per quarter." (Id. ¶ 10 (citation omitted).) Moreover, Scott does not have a medical or psychological condition that prevents him from working. (Id. (citation omitted).) "Scott will continue to be reviewed on a six-month basis to determine whether his funds are commensurate with his payment plan." (Id.) Scott "has not missed a payment to date, nor has his account ever reached a 'zero' balance." (Id. ¶ 5; id. Attach. A, at 9-14.)

## C. Analysis

The BOP's IFRP is a penological program that encourages "each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R § 545.10. The program allows for the development of a financial plan so that inmates may satisfy obligations, such as court-ordered restitution payments, while imprisoned. See id. § 545.11(a). To encourage participation in the IFRP, an inmate who refuses to comply with an established financial plan may lose some privileges and eligibility for community-based programs. See id. § 545.11(d). The United States Court of Appeals for the Fourth Circuit has held that challenges to the BOP's collection of court-ordered restitution via the

IFRP are properly brought in a § 2241 petition. Fontanez v. O'Brien, 807 F.3d 84, 85 (4th Cir. 2015).

In the present action, Scott challenges the application of the BOP's IFRP as a means to collect payment of his court-ordered restitution.[3] Scott argues that pursuant to his J&C Order, federal regulations, and IFRP policy, the BOP cannot collect more than $15.00 per quarter to apply towards his restitution. (See § 2241 Pet. 10-15.) Scott contends that, as a result of his participation in the IFRP at a rate of $25.00 per quarter, he is unable to afford telephone calls with his family and is insufficiently saving for life after imprisonment. (Id. at 14.)

1. **Claim One**

In Claim One, Scott argues that his restitution payments, collected pursuant to the IFRP at $25.00 per quarter, violate his J&C Order. (§ 2241 Pet. 11-12.) Specifically, Scott asserts that because his J&C Order states that "not less than $15 per quarter" may be collected towards his restitution, the BOP is violating the Order by collecting the $25.00 per quarter Scott agreed to in the IFRP agreement. (See id. at 12-13, 15.) Scott's argument is frivolous.

Scott's J&C Order states that "[r]estitution shall be due during the period of imprisonment, at the rate of not less than $15 per quarter, and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program." (ECF No. 1-1, at 1.) The language "not less than $15 per quarter" makes clear that the BOP is not limited to collecting $15.00 per quarter. Rather, the Order sets the minimum at $15.00. See, e.g., Dade

---

[3] Scott also challenges the BOP's use of the IFRP to collect his court-ordered special assessment. (See § 2241 Pet. 11.) However, in March 2017, Scott's obligation to pay the special assessment terminated, and all subsequent payments have been applied solely to his still-owed restitution. (Williams Decl. ¶ 11.) Therefore, Scott's challenge to the application of the IFRP to payment of his special assessment is moot. Cf. Benitez v. McGrew, No. CV 13-1202-MWF (PLA), 2013 WL 4666332, at *3 (C.D. Cal. Aug. 29, 2013) (concluding § 2241 petition was moot where petitioner had paid in full his felony assessment and thus was no longer a participant in the IFRP).

v. Sanders, 510 F. App'x 714, 718 (10th Cir. 2013) (concluding that the BOP may collect petitioner's restitution under the IFRP at a rate higher than the minimum amount ordered in his J&C Order); United States v. Lemoine, 546 F.3d 1042, 1046 (9th Cir. 2008) (holding that the Mandatory Victims Restitution Act "does not prohibit an inmate from voluntarily making larger . . . payments than what was set by the sentencing court. Nor does it limit the authority of the BOP, through the IFRP, to offer incentives to inmates to pay their restitution obligations in larger amounts."). Scott fails to demonstrate that the BOP is violating his J&C Order by collecting $25.00 per quarter rather than the stated minimum of $15.00 per quarter.[4] Accordingly, it is RECOMMENDED that Claim One be DISMISSED.

## 2. Claim Two

In his second claim, Scott argues that the BOP is collecting his restitution payments in violation of BOP Program Statement 5380.08. (See § 2241 Pet. 13.)

Program Statement 5380.08 was promulgated by the BOP to implement the IFRP as required by 28 C.F.R. § 545.11. See BOP Program Statement 5380.08(1). Scott cites two provisions of BOP Program Statement 5380.08 in support of his argument. Specifically, Scott recites BOP Program Statement 5380.08(8)(a)(3) and (8)(a)(5) which state, in relevant part, "[t]he court may establish a payment schedule or a deferred payment date to satisfy a restitution order or a fine" and "if the J&C has a specific payment plan outlined, payments are to be collected according to this direction provided in the court order." (Id.) Scott fails to explain why the BOP's collection of his restitution payments through the IFRP violates Program

---

[4] Scott also states that it is of note that his J&C Order requires "[n]ominal restitution payments . . . as the Court finds that the defendant's economical circumstances do not allow for either immediate or future payment of the amount ordered." (§ 2241 Pet. 13.) Scott fails to explain how this language affects the BOP's authority to collect more than the $15.00 minimum when Scott's current circumstances allow for such greater payments. See discussion infra Parts C.1-2.

9

Statement 5380.08(8)(a). (See id.) Presumably, Scott argues that his J&C Order has set a payment plan of $15.00 per quarter, which the BOP is required to follow pursuant to Program Statement 5380.08(8)(a). (See id.) However, as discussed above, Scott's J&C Order did not establish a payment plan or direct that the BOP may collect only $15.00 per quarter. The J&C Order directed a minimum payment of $15.00 per quarter and noted that the "[r]estitution shall be due . . . pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program." (ECF No. 1-1, at 1.) Contrary to Scott's assertion, his IFRP payments of $25.00 a quarter are collected in accordance with BOP Program Statement 5380.08(8)(a) because the BOP is collecting Scott's restitution pursuant to his J&C Order and at the IFRP's minimum rate. See Dade, 510 F. App'x at 718; Lemoine, 546 F.3d at 1046. Therefore, this Claim lacks merit and it is RECOMMENDED that Claim Two be DISMISSED.

### 3. Claim Three

In Claim Three, Scott argues that the BOP is collecting his restitution at $25.00 per quarter in violation of 28 C.F.R. § 545.11(b). (See § 2241 Pet. 14.)

> The regulation states, in relevant part:
> In developing an inmate's financial plan, the unit team shall first subtract from the trust fund account the inmate's minimum payment schedule for UNICOR or non-UNICOR work assignments, set forth in paragraphs (b)(1) and (b)(2) of this section. The unit team shall then exclude from its assessment $75.00 a month deposited into the inmate's trust fund account. This $75.00 is excluded to allow the inmate the opportunity to better maintain telephone communication under the Inmate Telephone System (ITS).

28 C.F.R. § 545.11(b).

Scott is a non-UNICOR inmate, so paragraph (b)(1) applies to him. (Resp. 7.) Paragraph (b)(1) states: "Ordinarily, the minimum payment for non-UNICOR . . . inmates will be $25.00 per quarter. This minimum payment may exceed $25.00, taking into consideration the inmate's specific obligations, institution resources, and community resources." 28

C.F.R. § 545.11(b)(1).

As discussed below, Scott alleges the BOP is violating 28 C.F.R. § 545.11(b) in two ways.

### a. The IFRP Requires a $25.00 Minimum Payment for Participation

First, Scott contests that the IFRP requires a minimum payment of $25.00 per quarter.[5] (Resp. 5.) In support of his argument, Scott heavily relies on the modifier "ordinarily" as used in 28 C.F.R. § 545.11; he claims that "[n]either regulation nor policy establishes a required minimum payment for inmates who are enrolled in the IFRP," (id. at 6), and that "[t]he word 'ordinarily' necessarily implies the possibility of something out of the ordinary, and cannot be read as 'always.'" (Id. at 7.) But Scott misreads 28 C.F.R. § 545.11(b). The regulation requires that "ordinarily" the payment for non-UNICOR inmates is $25.00 per quarter, but that "[t]his minimum payment may exceed $25.00." 28 C.F.R. § 545.11(b)(1) (emphasis added). Contrary to Scott's assertion, "ordinarily" does not limit the BOP's authority but rather grants it discretion to set a higher IFRP amount. Moreover, courts have interpreted 28 C.F.R. § 545.11(b) to require a minimum payment of $25.00 per quarter. See United States v. Snyder, 601 F. App'x 67, 68 (3d Cir. 2015) (explaining that under the IFRP, "[a] minimum payment of $25 is required every three months"); Driggers v. Cruz, 740 F.3d 333, 335 (5th

---

[5] Although Scott states in his Response that he "disputes the 'fact' that the IFRP has a $25.00 a quarter minimum payment," (Resp. 5.), the IFRP's requirement that an inmate pay $25.00 per quarter is undisputed. Scott further argues that because he did not make IFRP payments in October 2013, January 2014, and April 2014, when he was on temporary exempt status, the BOP has demonstrated that there is not a minimum required IFRP payment. (Id. at 8.) However, Scott's argument is nonsensical because he acknowledges that he was placed on temporary exempt from participation status, meaning he was not participating in the IFRP at that time. It is the participation in the IFRP—i.e. the payment and receiving of the benefits—that requires at least a $25.00 per quarter payment.

Cir. 2014) (stating that "the IFRP mandates that an inmate pay no less than $25 per quarter"). Therefore, Scott's argument that there is no minimum $25.00 payment required for participation in the IFRP is meritless. Scott fails to demonstrate that the BOP is collecting $25.00 per quarter in violation of 28 C.F.R. § 545.11(b).

### b. The IFRP Does Not Require that an Inmate Have $450.00 in His Account

Scott also argues that 28 C.F.R. § 545.11(b) prevents the BOP from collecting $25.00 per quarter from him if he has less than $450.00 in his inmate trust fund account for the previous six months—$75.00 for each month. (§ 2241 Pet. 14; Resp. 8.) Again, Scott misreads 28 C.F.R. § 545.11(b). The regulation requires that the unit team, when developing or reviewing an inmate's IFRP plan, shall determine the total funds deposited into the inmate's trust fund account for the previous six months, and then shall first deduct the inmate's IFRP payments before applying the $75.00 per month exemption. 28 C.F.R. § 545.11(b). Any remaining funds in the inmate's account may then be considered for additional IFRP payments. Id.; Driggers, 740 F.3d at 335. The BOP Program Statement follows the directives of the regulation for calculating IFRP payments. See BOP Program Statement 5380.08(8)(b). Further, BOP Program Statement 5380.08(8)(b) explains:

> The Unit Manager is the determining authority when it comes to deciding whether an inmate's IFRP payments are commensurate with his/her ability to pay. This decision is solely at the discretion of the Unit Manager and is to be decided on a case-by-case basis. Variations in what is considered a commensurate payment are expected and are appropriate since the determination of commensurate payments is based on individual circumstances.

Id.

BOP officials are granted extensive discretion to consider an inmate eligible and able to enroll in the IFRP and, first and foremost, Scott fails to demonstrate that this Court has the authority to review the amount the BOP collects from him under the

12

IFRP. See Pontefract v. Walton, No. 14-CV-1089-DRH, 2014 WL 5543190, at *2 (S.D. Ill. Nov. 3, 2014) (dismissing as meritless petitioner's argument that the BOP must exclude $75.00 per month from IFRP payments under 28 C.F.R. § 545.11 and BOP Program Statement 5380.08 because "the Court does not have the authority to interfere with the BOP's discretion in its administration of the IFRP." (citing In Re Buddhi, 658 F.3d 740, 741 (7th Cir. 2011))); Dunlea v. Fed. Bureau of Prisons, No. 3:09-CV-2051(CFD), 2010 WL 522715, at *2 (D. Conn. Feb. 8, 2010) (citation omitted) ("The BOP has absolute discretion in determining how the IFRP will be applied to each inmate.")). "The amount an inmate must pay under [the] IFRP is a matter entrusted to the Executive Branch, and '[c]ourts are not authorized to override the [BOP's] discretion about such matters, any more than a judge could dictate particulars about a prisoner's meal schedule or recreation.'" United States v. Rush, 853 F. Supp. 2d 159, 162 (D.D.C. 2012) (alterations in original) (quoting United States v. Sawyer, 521 F.3d 792, 794 (7th Cir. 2008)). Simply put, the BOP "does not need judicial permission to remit money from a prisoner's account, . . . Whether inmates make any money during their captivity, and, if they do, how much must be paid to creditors, are subjects well within the authority of the Executive Branch." Sawyer, 521 F.3d at 794 (citing C.F.R. § 545.11 and BOP Program Statement 5380.08). For this reason alone, Claim Three fails.

Moreover, the record establishes that the BOP has not abused its discretion or violated 28 C.F.R. 545.11(b) in its use of the IFRP to collect Scott's restitution payments. In accordance with 28 C.F.R. § 545.11(b) and BOP Program Statement 5380.08, the BOP considered Scott for participation in the IFRP early in his incarceration at FCC Petersburg, but he was placed on "exempt tmp status because his six month deposit was below [$]450.00." (ECF No. 1-1, at 2.) Scott was again reviewed for the IFRP on January 2, 2014 and April 9, 2014 but remained in "exempt tmp" status. (Id.) However, during this timeframe, Scott began working, on May 9, 2013, and has only had one month-long break in employment since that time. (See Petre Decl. ¶¶ 5-6.) At his job, Scott earns approximately $27.00 per month, (Williams Decl. ¶ 6; id. Attach. A at 14-15), and Scott occasionally

13

receives monetary support from sources outside FCC Petersburg. (See Williams Decl. ¶ 7.) On November 18, 2014, after reviewing the IFRP with BOP staff, Scott signed the IFRP agreement wherein he agreed that he would pay $25.00 a quarter towards his court-ordered financial obligations. (ECF No. 1-1, at 3.) Scott does not have a medical or psychological condition that prevents him from working. (Williams Decl. ¶ 10.) Scott "has not missed a payment to date, nor has his account ever reached a 'zero' balance." (Id. ¶ 5; id. Attach. A at 9-14.)

As Scott earns a minimum of $325.00 per year from his institutional job alone, Scott's unit manager reasonably considered him able to make four $25.00 payments a year towards his restitution. See BOP Program Statement 5380.08(8)(b). Further, the BOP may consider non-institution resources when evaluating an inmate's IFRP eligibility. 28 C.F.R. § 545.11(b). Therefore, BOP officials appropriately considered the resources that Scott received from outside FCC Petersburg when they evaluated him for the IFRP. The BOP then properly enrolled Scott in the IFRP by presenting him with the IFRP agreement. See BOP Program Statement 5380.08(8)(a)(5). The BOP has continued to assess Scott's work and financial status as being commensurate with the ability to meet his scheduled restitution payments, see id. 5380.08(8)(b), all of which he has successfully made to date. (Williams Decl. ¶ 5.) Scott fails to demonstrate that the BOP has abused its discretion by collecting from him the minimum payment permitted by the IFRP despite the fact that he had less than $450.00 in his inmate trust fund account for the previous six months. Cf. Pontefract, 2014 WL 5543190, at *2 (dismissing as meritless petitioner's argument that the BOP must exclude $75.00 per month from IFRP payments under 28 C.F.R. § 545.11 and BOP Program Statement 5380.08).

In his Response, Scott contests the BOP's determination that he is placing "ample" funds towards communication with his family, and the BOP's "reasonable inference" that because he receives monetary support from outside the institution, he qualifies for the IFRP. (Resp. 2-4.) Scott argues that the money he set aside for communication with his family has been wrongly considered "ample" by the BOP because it consisted of: $35.00 for phone calls and $65.00 for e-mail in the six months prior to enrolling

14

in the IFRP; $27.00 for phone calls and $117.00 for e-mail in the six months after enrolling in the IFRP; and, approximately $19.00 for phone calls and $110.00 for e-mail in the six months prior to filing the instant action. (Id. at 2; see Williams Decl. ¶ 8.) Scott also contests the BOP's inference that because he occasionally receives monetary support from sources outside of FCC Petersburg, he is financially able to participate in the IFRP. (Resp. 4.)

Scott fails to demonstrate any violation of 28 C.F.R. § 545.11(b) or an abuse of discretion by the BOP in its collection of the minimum payment permitted by the IFRP. Scott has been employed for the duration of his participation in the IFRP, has a salary from institutional employment, does not have a medical or psychological condition that prevents him from working, and has never missed an IFRP payment or had a balance of zero on his account. To the extent Scott complains that he lacks sufficient funds to make phone calls to his family, this argument rings hollow. Scott appears to be putting hundreds of dollars a year towards phone and e-mail access (see Williams Decl. ¶ 8), but only pays $100.00 annually in restitution. Thus, Scott fails to demonstrate that the BOP has violated 28 C.F.R. § 545.11 or abused its discretion by encouraging him to make restitution payments pursuant to the IFRP and as instructed by his J&C Order. See Pontefract, 2014 WL 5543190, at *2; Lemoine, 546 F.3d at 1046. Accordingly, it is RECOMMENDED that Claim Three be DISMISSED.

### 4. Scott's Participation in the IFRP is Voluntary

In Claim Four, Scott argues that his participation in the IFRP is involuntary. (See § 2241 Pet. 12.) It is uncontested that Scott signed the IFRP agreement authorizing the BOP to collect from him $25.00 per quarter for his outstanding restitution. (See ECF No. 1-1, at 3.) Respondent explains that the IRFP is voluntary, but that "[i]f the inmate chooses not to participate, he might be delinquent on the obligations imposed by his sentence, and as a result, may forfeit certain privileges available to inmates who do participate." (Mem. Supp. Mot. Summ. J. 8 (citations omitted), ECF No. 20.) In his § 2241 Petition, Scott alleges that "[i]t does not seem like

the [IFRP] is voluntary at all, but rather more like extortion."[6]  (§ 2241 Pet. 12.)  However, Scott misunderstands the characterization of the IFRP program as "voluntary."

The IFRP is voluntary in the sense that "an inmate in the [BOP's] custody may lose certain privileges by not participating in the IFRP, but the inmate's participation cannot be compelled." United States v. Boyd, 608 F.3d 331, 334 (7th Cir. 2010) (citation omitted); see Fontanez v. O'Brien, 807 F.3d 84, 85 (4th Cir. 2015) ("[T]he BOP cannot compel an inmate to make payments [under the IFRP.]" (citing Boyd, 608 F.3d at 334)). Although Scott signed the IFRP agreement, he may refuse to participate in the program at any time. See BOP Program Statement 5380.08(9)(d). Thus, Scott's argument that his participation in the IFRP is involuntary lacks merit.[7] See Ward v. Chavez, 678 F.3d 1042, 1047 (9th Cir. 2012). Accordingly, it is RECOMMENDED that Scott's Claim Four be DISMISSED.

---

[6] Further, for the first time in his Declaration in response to Respondent's Motion for Summary Judgment, Scott asserts that "[he] signed the 'Inmate Financial Plan' under duress and involuntarily." (Scott Decl. ¶ 6, ECF No. 23-1.) Such an airy generalization and conclusory allegation with no more, however, does "not suffice to stave off summary judgment or entitle a habeas petitioner to an evidentiary hearing." United States v. Roane, 378 F.3d 382, 400-01 (4th Cir. 2004) (citation omitted). Furthermore, to the extent that Scott argues that the threat of being denied benefits under the IFRP amounts to duress, as explained above, he is incorrect. See United States v. Young, 533 F. Supp. 2d 1086, 1087 (D. Nev. 2007) (concluding an inmate does not sign an IFRP agreement under duress when he would not receive the benefits that come with the program if he did not enroll).

[7] In his Response, Scott also contends that it is a disputed fact for purposes of summary judgment whether the IFRP agreement he signed is a "contract." (Resp. 4.)  Whether or not the IFRP agreement is a contract is immaterial as at no time has Scott asked to withdraw from the IFRP agreement. (See § 2241 Pet. 15.)

16

### D. Conclusion

For the foregoing reasons, it is RECOMMENDED that the Motion for Summary Judgment (ECF No. 19) be GRANTED and the Motion to Dismiss (ECF No. 19) be DENIED as moot. It is further RECOMMENDED that Scott's 2241 Petition (ECF No. 7) be DENIED, the action be DISMISSED, and a certificate of appealability be DENIED.

(Report and Recommendation 1-24 (alterations in original).)

## II. STANDARD OF REVIEW FOR REPORT AND RECOMMENDATION

"The magistrate makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court." Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993) (citing Mathews v. Weber, 423 U.S. 261, 270-71 (1976)). This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." Thomas v. Arn, 474 U.S. 140, 147 (1985). "[W]hen a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations," de novo review is unnecessary. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citations omitted).

## III. SCOTT'S OBJECTIONS

In order for an objection to trigger de novo review, it must be made with "sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007) (citations omitted); see Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003) ("[P]etitioner's failure to object to the magistrate judge's recommendation with the specificity required by the Rule is, standing alone, a sufficient basis upon which to affirm the judgment of the district court as to this claim."). Further, the objection must respond to a specific error in the Report and Recommendation. See Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). "General objections to a magistrate judge's report and recommendation, reiterating arguments already presented, lack the specificity required by Rule 72 and have the same effect as a failure to object." United States v. Wearing, No. 3:04-cr-00092, 2011 WL 918343, at *2 (W.D. Va. Mar. 15, 2011) (citing Orpiano, 687 F.2d at 47; Veney v. Astrue, 539 F. Supp. 2d 841, 845-46 (W.D. Va. 2008)), aff'd, 446 F. App'x 641 (4th Cir. 2011). After reviewing Scott's Objections, the Court concludes that the majority of these objections either rehash arguments already presented or fail to respond to a specific error and are tantamount to failing to object at all.

In his first objection, Scott "objects to the Magistrate Judge's finding that the BOP is not collecting restitution in violation of the Judgment and Commitment Order . . . [because this] statement of Scott's claim is not accurate, and therefore his analysis and conclusion is incorrect." (Obj. 1, ECF No. 26.) Scott contends that instead, his "argument is that the BOP is not following its own policies in increasing the payment above $15 per quarter." (Id. at 1-2.) The Magistrate Judge thoroughly addressed Scott's claim that the BOP was not following its policies when it increased Scott's IFRP payment above $15 a quarter and found this claim lacked merit. Scott fails to identify any error in the Magistrate Judge's conclusion. Therefore, Scott's objection fails to comport with Federal Rule of Civil Procedure 72 because he fails to identify with the requisite specificity any error by the Magistrate Judge.

In his second objection, Scott objects to the Magistrate Judge's conclusion that the IFRP has a minimum payment of $25 per quarter. Scott objects "for the reasons set forth in his Response in Opposition." (Obj. 2.) Scott's seventh objection repeats the same. (Id. at 3.) Instead of identifying "a specific error in the magistrate's proposed findings and recommendations," Orpiano, 687 F.2d at 47 (citations omitted), Scott simply reargues Claim One and a portion of Claim Three.

The Magistrate Judge thoroughly and correctly analyzed Scott's argument and concluded it lacked merit. Scott fails to identify any error in the Magistrate Judge's conclusion. Scott's second and seventh objections will be overruled.

In his third objection, "Scott objects to the Magistrate Judge's erroneous reading of IFRP regulations relating to the $75 monthly exclusion." (Obj. 2.) Scott's objection makes little sense. It appears that Scott intends to reargue that the IRFP regulations require the BOP deduct the "$75 monthly exemption" before calculating an inmate's quarterly IFRP payment. (Id.) As discussed previously, Scott fails to direct the Court to any persuasive authority that supports his reading of the regulation. Thus, Scott fails to identify any error in the Magistrate Judge's conclusion that the BOP is not abusing its discretion in the manner in which it is collecting Scott's restitution from him pursuant to the IFRP. Moreover, he also fails to identify any error in the Magistrate Judge's first conclusion that the Court lacks the authority to review the amount the BOP collects from him pursuant to the IFRP. To the extent that Scott objects with the requisite specificity, instead of merely rehashing old argument, Scott's third objection will be overruled.

In Scott's fourth objection, he states: "Scott objects to the Magistrate Judge's finding that Scott's participation in the

IFRP is voluntary for the reasons set forth in his initial petition and his response." (Id. at 3.) In his fifth objection, Scott objects to the Magistrate Judge's conclusion that "there are no disputed issues of fact" and continues the same argument from Claim Four in his § 2241 Petition. (Id.) Scott fails to identify any error in the Magistrate Judge's conclusion by merely rearguing or directing the Court to arguments in his prior filings. Therefore, Scott's fourth and fifth objections fail to comport with Federal Rule of Civil Procedure 72 because he fails to object with the requisite specificity to any conclusion by the Magistrate Judge.

In his sixth objection, Scott objects to the Magistrate Judge's conclusion "finding that whether or not the IFRP agreement is a contract is immaterial." (Id.) Scott's objection about whether or not a contract exists has no bearing on the Magistrate Judge's conclusion that his claims lack merit. Scott's sixth objection will be overruled.

Finally, in his eighth and ninth objections, Scott simply objects to the Magistrate Judge's recommendation that summary judgment be granted and his § 2241 Petition be denied. (Id. at 3-4.) The Magistrate Judge thoroughly examined Scott's claims and found that they lacked merit, and thus recommended that summary judgment be granted and his § 2241 Petition be denied. Scott's terse statements that these recommendations are

incorrect, fails to identify an error in the Magistrate Judge's analysis or conclusions with respect to his claims, and thus, lacks the requisite specificity to comport with Federal Rule of Civil Procedure 72.

Even in light of the fact that the Court is not required to conduct a de novo review of the majority of Scott's objections, after reviewing the record, the Court finds that the Magistrate Judge properly assessed Scott's claims and found they lacked merit. Scott fails to advance any persuasive reason for not dismissing his claims.[8] Accordingly, the Report and Recommendation will be accepted and adopted.

## IV. CONCLUSION

Scott's Objections (ECF No. 26) will be overruled. The Report and Recommendation (ECF No. 24) will be accepted and adopted. The Motion for Summary Judgment (ECF No. 19) will be granted. The § 2241 Petition (ECF No. 7) will be denied. Scott's claims and the action will be dismissed. A certificate of appealability will be denied.

_____

[8] The Court notes that the day after that the Magistrate Judge issued his Report and Recommendation, the Court docketed a Declaration from Scott. In that Declaration, Scott simply states that his institutional pay has been cut without explanation. (Decl. 1, ECF No. 25.) Scott fails to explain to the Court how this Declaration "could carry the burden of proof of his claim at trial." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added).

22

The Clerk is directed to send a copy of this Memorandum Opinion to Scott and counsel of record.

It is so ORDERED.

/s/ REP

Robert E. Payne
Senior United States District Judge

Date: March 1, 2018
Richmond, Virginia